IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TROY GREEN,

                      OPINION AND ORDER

        Plaintiff,

                      18-cv-556-bbc

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Troy Green is seeking review of a final decision denying his claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that he has been disabled since March 2013 because of a combination of physical and mental impairments. An administrative law judge concluded that even though plaintiff has severe impairments, he is not disabled because he can perform a reduced range of light work for which there are a significant number of jobs in the national economy. Plaintiff contends that the administrative law judge erred by not admitting into evidence an opinion from plaintiff's treating physician, failing to give proper weight to the opinions of plaintiff's treating physician that were in the record and failing to account for plaintiff's mental impairments in assessing his residual functional capacity. For the reasons explained below, I am not persuaded by plaintiff's arguments. Therefore, I will affirm the acting commissioner's decision.

        The following facts are drawn from the administrative record (AR).

FACTS

A.  Social Security Application and Background

Plaintiff Troy Green was born in 1975.  He filed for disability insurance benefits in June 2014, contending that he was disabled by depression, anxiety, non-epileptic seizures and dyslexia.  AR 178, 203.  His application was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge .  AR 76, 110, 125.  After the hearing, the administrative law judge issued a written decision concluding that plaintiff was not disabled.  AR 16.  In May 2018, the Appeals Council denied plaintiff's request for review.  AR 1.

B.  Medical Treatment for Mental Health

Because plaintiff's appeal relates only to limitations caused by his mental impairments, I will not discuss records relating to his physical impairments.

Plaintiff has a history of depression, anxiety and non-epileptic seizures.  In March 2013, plaintiff was hospitalized for a seizure and was treated with an anti-seizure medication.  AR 304-05.  His condition improved within a few days and at follow up appointments, he reported no further seizures.  AR 309-17.  Laboratory imaging studies and physical examinations at the hospital were generally normal.  Id.

In July 2014, plaintiff saw a family practice physician with complaints of worsening depression. AR 350.  He reported that he was involved in a custody dispute, was taking care of his children and was crying a lot.  Id.  The doctor increased his Zoloft.  Id.  A few days

2

later, plaintiff saw Dr. Jeffrey Eichten, another family practice physician, with complaints of seizure activity, stress, anxiety and chronic pain. AR 347. Plaintiff told Dr. Eichten that he had had a seizure in family court after the judge told him he could lose his parental rights. He was taken to the hospital, where he reported that he had been skipping some of his medications and a toxicology screen was positive for four drugs that he had not been prescribed. AR 411-21. Plaintiff requested that Dr. Eichten prescribe narcotics and benzodiazepines, but Eichten declined because plaintiff has a history of polysubstance abuse. AR 348. Eichten increased plaintiff's gabapentin and anti-anxiety medications. Id.

Between June and August 2014, plaintiff had five sessions of mental health counseling. AR 387-395. His counseling sessions addressed life stressors, including his relationships, parenting, moving in with his brother and drinking. Id. Plaintiff also saw a neurologist in July 2014 for pseudoseizures. AR 401-03. The neurologist told plaintiff that because his seizures were unrelated to epilepsy, the doctor could not treat the condition and that plaintiff needed cognitive behavioral therapy or other mental health therapy. Id. Plaintiff was taken off anti-seizure medication.

Also in July 2014, plaintiff had a consultative examination with Travis Hinze, PhD. AR 494-498. Hinze noted that plaintiff appeared to be "mildly-to-moderately depressed," with mildly slow mental activity and a borderline "fund of knowledge." Id. Hinze diagnosed a major depressive disorder, anxiety disorder, stimulant use disorder in remission, cannabis use disorder and suspected borderline intellectual functioning. Hinze concluded that plaintiff had moderate impairments in several areas of mental functioning. AR 498.

In August 2014, plaintiff was admitted to a hospital for depression, anxiety and suicidal thoughts. AR 453. He reported that his living situation was stressful and that he had been drinking up to a 12-pack of beer a day and smoking marijuana every day that he could afford it. AR 453-57. He was prescribed bupropion and was discharged after two days of being in a stable condition. AR 451. Plaintiff saw Dr. Eichten a week later for a follow up appointment and continued to report anxiety and depression. AR 469.

Plaintiff saw Eichten again for depression, anxiety and hip pain in September and October 2014. AR 472, 76-77. He asked Dr. Eichten to write a letter stating he was psychologically stable and able to care for his children. Eichten wrote the letter, as well as another letter stating that plaintiff could not work because of physical pain. AR 476-77. At a December 2014 appointment, plaintiff reported that his mental health was stable with bupropion, and Dr. Eichten encouraged him to seek employment, as well as lose weight, exercise and eat a healthier diet. AR 482.

In March 2015, plaintiff reported to Dr. Eichten that he was homeless, struggling with depression and anxiety and using marijuana frequently. AR 485. He asked for a prescription for synthetic marijuana, but Eichten advised him to reduce or stop using marijuana and to contact his social worker for assistance. AR 486. Plaintiff saw Eichten again in July 2015 and reported that he was still struggling with depression and anxiety. AR 556. Eichten's diagnoses were severe social anxiety, generalized anxiety with depression, a history of outbursts and anger and polysubstance abuse. AR 557. Plaintiff told Eichten that

he was applying for disability, and Eichten wrote in his progress report that plaintiff "had mental health issues that make it very challenging for him to get in the workplace." Id.

In September 2015, plaintiff told Dr. Eichten that he was having increased depression and stress and had experienced another pseudoseizure, but in October 2015, he reported that he was feeling better. AR 552. Eichten again encouraged plaintiff to make goals, find work, volunteer, exercise and find other ways to stay productive. AR 553.

### C. Administrative Hearing

At the May 9, 2017 hearing, plaintiff's counsel requested that the administrative law judge consider a medical source statement that had been completed by Dr. Eichten on April 27, 2017, dkt. #13-6, and submitted by counsel on May 4. AR 39. Eichten wrote that plaintiff was moderately, markedly or extremely impaired in a number of areas related to his psychiatric state and that he would miss four or more days of work a month as a result of his condition. The administrative law judge declined to consider the statement because it was not submitted more than five business days before the hearing, as required by 20 C.F.R. § 404.935. Plaintiff's counsel argued that it was Dr. Eichten's fault, and not plaintiff's or counsel's fault, that the medical statement was not submitted sooner. The administrative law judge rejected that argument, stating that because plaintiff had been seeing Eichten since 2015, counsel should have asked Eichten to complete a medical source statement before April 2017. AR 40-41.

At the time of the hearing, plaintiff was 42 years told. AR 42. Plaintiff testified that he had never held a full-time job for as long as one year and that he had quit or been fired from previous jobs because he got frustrated or anxious. AR 44-45. He testified that he does not have a driver's license because driving in traffic is too stressful for him, AR 47, public places make him anxious because he worries he will have a seizure, AR 47, he does not have friends, AR 48, and he has been homeless off and on for the past few years. Id. Plaintiff also stated that he spends eight to ten hours of his day sleeping and that he takes several anti-depressants everyday. AR 48-49.

### D. Administrative Law Judge's Decision

The administrative law judge found that plaintiff was insured through September 20, 2016, and that he had not engaged in substantial gainful activity since his alleged onset date on March 31, 2013. AR. 16. The administrative law judge next found that plaintiff's psychogenic non-epileptic seizures, headaches, depression, anxiety disorder, substance use disorder, minor disc bulging of L4-L5, obesity, diabetes and left snapping hip syndrome were severe impairments, AR 16, but that the impairments did not meet or medically equal the severity of a listed impairment. AR 17.

The administrative law judge included a thorough review of plaintiff's medical records AR 21-26, and explained why he did not think that plaintiff's impairments were disabling. In discussing plaintiff's mental impairments, the administrative law judge found that plaintiff was moderately limited in several areas, AR 18-19, but that the records showed that

he was able to go outside, take care of his dog, go to the library, shop, wash clothes, visit family, ride a bike, handle finances and help prepare meals. AR 18. He also was able to act appropriately at his medical appointments, understand treatment recommendations, maintain conversation in treatment settings and ask appropriate questions. AR 19, 26. Plaintiff's mental health treatment and medications had been mostly conservative and routine and were at least somewhat effective in controlling his mental health symptoms. AR 27. His mental health had been treated primarily by his family practice physician, and he had not sought or been referred to more intensive mental health treatment such as partial hospitalization or day treatment. AR 27. Since his onset date of March 2013, plaintiff had been hospitalized once for mental health reasons, but the hospitalization was partly necessitated by plaintiff's intoxication. Id.

The administrative law judge gave weight to the opinions of the state agency psychological consultants and Dr. Hinze, who had conducted an examination of plaintiff. These psychologists stated the opinion that plaintiff was no more than moderately limited by mental health problems. AR 28. The administrative law judge gave little weight to Dr. Eichten's statements in progress notes and letters stating that plaintiff is unable to work because of his mental health conditions and pain, because he found that these opinions were not supported by actual exam findings, observations, course of treatment or overall functioning. AR 29. The administrative law judge also noted that Eichten's opinions contradicted statements he had made to plaintiff in December 2014 and September 2015,

7

encouraging plaintiff to find a job, volunteer, exercise and make goals to feel motivated and productive.

The administrative law judge found that plaintiff had the residual functional capacity to perform light work with the following limitations:

> routine, repetitive up to 3-step tasks and instructions that are fixed and predictable from day to day, and align with a specific vocational preparation of a 1 or 2 as defined in the Dictionary of Occupational Titles, occasional brief and superficial contact with coworkers and the public, however, the tasks themselves can be performed independently meaning that they would not require collaboration or teamwork with coworkers and would not involve direct interaction or serving the public, and no high pace, high quota type tasks such as along an assembly line[.]

AR 21. (The administrative law judge also included several physical limitations but those are irrelevant to plaintiff's appeal.)

The administrative law judge concluded from a vocational expert's testimony that plaintiff could perform work that existed in the national economy. Specifically, the administrative law judge identified the positions of housekeeper, electronic worker and routing clerk.

OPINION

Plaintiff contends that the administrative law judge erred by (1) refusing to admit into evidence the Dr. Jeffrey Eichten's medical source statement dated April 27, 2017; (2) rejecting Dr. Eichten's other opinions that were in the record; and (3) failing to incorporate adequate restrictions for plaintiff's mental impairments in the residual functional capacity assessment.

8

I address each of plaintiff's arguments below. In reviewing the administrative law judge's decision with respect to these issues, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." Id. See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

### A. Untimely Medical Source Statement

Plaintiff contends that the administrative law judge erred in failing to consider the medical source statement Dr. Eichten completed on April 27, 2017. However, a claimant is required to submit any written evidence to the administrative law judge "no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 404.935(a). If the claimant misses the deadline, an administrative law judge "may decline to consider or obtain the evidence" unless one of the exceptions in § 404.935(b) applies. Plaintiff does not identify a particular exception under § 404.935(b) that applies in this instance, but he argues that it was Dr. Eichten's fault that the source statement was not submitted on time. Plaintiff

9

says that he asked Dr. Eichten for the medical source statement on April 13, 2017, but that Dr. Eichten did not return the completed report until May 4, 2017.

Plaintiff appears to be relying on the exception set forth in § 404.935(b)(3)(iv), which states that an administrative law judge may consider untimely evidence if

> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to . . . (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

I agree with the administrative law judge that plaintiff has failed to show that this exception applies. As the administrative law judge pointed out, Dr. Eichten had been treating plaintiff since 2015, and plaintiff's counsel knew in February 2017 that the hearing was scheduled for May 9, 2017. Counsel identified no good reason why he waited until less than a month before the hearing to ask Dr. Eichten to complete the medical source statement, and he has certainly not identified an "unusual, unexpected, or unavoidable circumstance" beyond his control. Therefore, the administrative law judge did not err in refusing to consider the untimely medical source statement.

B. <u>Dr. Eichten's Opinions</u>

Plaintiff next contends that the administrative law judge failed to give proper weight to the letters and opinions of Dr. Eichten that were in the record. Specifically, when plaintiff was applying for county benefits and seeking to limit his child support obligations, Eichten wrote several letters on plaintiff's behalf stating that he could not work because of

10

his hip pain and mental health problems.  AR 230, 232, 234, 383, 384, 461, 634-36, 639-41, 649, 650-51, 652-54, 656, 658-59.

Under the regulations applicable to plaintiff's claim, the opinions of treating physicians such as Eichten are entitled to controlling weight if they are supported by objective medical evidence and are consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013).  Although an administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it.  Id.  Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527).

In this instance, the administrative law judge gave little weight to Eichten's opinions because (1) the standards relating to county benefits and child support obligations are different from the standards for receiving social security disability; (2) Eichten's opinions were not consistent with his actual exam findings or observations regarding the effectiveness of plaintiff's medications or with the doctor's recommendations that plaintiff attempt to find a job, volunteer and exercise; (3) the opinions were not supported by plaintiff's relatively conservative course of treatment with a family practice physician and his overall functioning; and (4) the opinions of Dr. Hinze and the state agency consultants, who were specialists in

11

psychology, were more persuasive and supported by the medical record and plaintiff's activities. AR 25, 28-29. These are all valid reasons for discounting Eichten's opinions.

Plaintiff makes little effort to challenge the administrative law judge's analysis. His primary argument seems to be that the administrative law judge failed to discuss which findings, observations, treatment or other evidence were inconsistent with Eichten's opinions. But the administrative law judge's decision included a thorough analysis of plaintiff's treatment records and functioning immediately before her discussion of Eichten's opinions. The administrative law judge was not required to repeat her analysis in the context of evaluating the opinion evidence. Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015) ("We do not discount [the ALJ's discussion of the claimant's impairments and the objective medical evidence] simply because it appears elsewhere in the decision."); Rice v. Barnhart, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole[.]") Therefore, plaintiff's argument that the administrative law judge failed to give adequate weight to Dr. Eichten's opinions is not persuasive and does not provide a reason to remand this case.

## C. Residual Functional Capacity

Finally, plaintiff argues that the administrative law judge's residual functional capacity determination does not adequately account for plaintiff's mental limitations. In particular, he argues that the administrative law judge needed to do more than limit plaintiff to "simple routine repetitive work." Plt.'s Br., dkt. #13, at 28. Plaintiff's argument is completely

undeveloped. As the commissioner points out, the administrative law judge did not limit plaintiff to "simple routine repetitive work." Instead, she stated that plaintiff had the mental capacity to perform work involving:

> routine, repetitive up to 3-step tasks and instructions that are fixed and predictable from day to day, and align with a specific vocational preparation of a 1 or 2 as defined in the Dictionary of Occupational Titles, occasional brief and superficial contact with coworkers and the public, however, the tasks themselves can be performed independently meaning that they would not require collaboration or teamwork with coworkers and would not involve direct interaction or serving the public, and no high pace, high quota type tasks such as along an assembly line[.]

AR 21. Plaintiff does not explain why this assessment fails to account for his mental limitations. In particular, he does not point to any medical source opinions or other evidence that would support greater limitations. In contrast, the commissioner has presented a thorough explanation of the reasons she found the assessment insufficient, with citations to medical records and opinion evidence. Plaintiff did not file a reply brief and failed to respond to the commissioner's argument. By failing to develop any argument as to why this assessment is inadequate, plaintiff has waived his opportunity to challenge it. Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal citation omitted).

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Troy Green's appeal is

DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of May, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge